**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JASON G. VOGEL | ) | |
| 1278 Glenneyre St. | ) | |
| Suite #300 | ) | COMPLAINT IN DEFAMATION AND |
| Laguna Beach, CA 92651 | ) | OTHER CAUSES |
| | ) | |
| Plaintiff, | ) | RELIEF SOUGHT TO INCLUDE |
| | ) | INJUNCTIVE RELIEF AND FOR |
| v. | ) | MONETARY JUDGMENT |
| | ) | |
| JOHN DOE 1 | ) | Civil No. 1:16-cv-01598-APM |
| Street address unknown | ) | |
| Herndon, VA | ) | The Honorable Amit Mehta |
| | ) | |
| JOHN DOE 2 | ) | PLAINTIFF DEMANDS A TRIAL BY |
| Street address unknown | ) | JURY |
| San Antonio, TX | ) | |
| | ) | |
| JOHN DOE 3 | ) | |
| Street address unknown | ) | |
| El Paso, TX | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOE 4 | ) | |
| Street address unknown | ) | |
| Chicago, IL | ) | |
| | ) | |
| Defendants. | ) | |

**REVISED AMENDED COMPLAINT**

**NOW COMES** the Plaintiff, Jason G. Vogel, by and through his undersigned attorneys, Bar-Adon & Vogel, PLLC, and brings this Revised Amended Complaint against Defendants John Doe 1, a citizen of Virginia, John Doe 2, a citizen of Texas, John Doe 3, a citizen of Texas and John Doe 4, a citizen of Illinois.  The causes of action are based on tortuous conduct done by them and which occurred in Washington, DC and elsewhere.  As grounds therefore, Plaintiff states as follows:

## PARTIES

1. Jason G. Vogel (hereinafter "Plaintiff") is an individual who resides in Laguna Beach, California. The Plaintiff is a citizen of California. He is a native of Washington, DC. He has family in the DC metropolitan area.

2. The Plaintiff owns and manages residential properties in several states, including in Washington, DC, New Mexico, and California.

3. Defendant John Doe 1 is believed to be a citizen of Virginia, living in or near Herndon, VA, near Washington, DC.

4. Defendant John Doe 2 is believed to be a citizen of San Antonio, Texas.

5. Defendant John Doe 3 is believed to be a citizen of El Paso, Texas.

6. Defendant John Doe 4 is believed to be a citizen of Illinois, living in or near Chicago or Naperville, which is a suburb of Chicago.

7. As detailed below, Defendants, individually or in concert with each other and under the direction and control of others, trespassed on the Plaintiff's land, fabricated lies about the Plaintiff, posted tortious and defamatory statements about the Plaintiff on the internet website www.TheRealJasonVogel.com (hereinafter the "website"), in a flyer disseminated throughout Plaintiff's neighborhood, on Facebook, and on Twitter. Subject to receiving Court approval, the Plaintiff intends to seek immediate discovery from non-parties including Facebook; Twitter; Ad Hoc Labs (Burner Phone), and others to determine the true names and addresses of the defendants. The Plaintiff also seeks early discovery against certain non-parties who the Plaintiff has reasonable belief possess information as to the identities of the Defendants and their co-conspirators.

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over the Defendants as several major parts of tortuous acts occurred here, in Washington, D.C., where many of Plaintiff's properties featured on the defamatory website are located. Plaintiff has suffered, is suffering, and will continue to

2

suffer harm and original injury from Defendants' tortious conduct in Washington, DC and elsewhere. Plaintiff has a place of business and conducts business in Washington DC.  A significant portion of Defendants' defamatory websites focus on the Plaintiff's Washington, DC properties. In addition, Defendants caused a physical trespass to occur on Plaintiff's properties, including his property in Washington, DC, so that they could photograph the properties for use in their defamatory publications.

9.  This Court also has subject matter jurisdiction because the amount in controversy exceeds $75,000 exclusive of interest and costs, and the controversy is between citizens of different states, per 28 U.S.C. § 1332(a)(1).

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in Washington D.C.

11. In addition, venue is proper under the District of Columbia's long-arm Statute, which is found in D.C. Code §13-423.  The statute provides that [a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission in the District of Columbia."  D.C. Code § 13-423 (a) (3).

## FACTUAL ALLEGATIONS

12. Defendants and people directing them and acting in concert with them created the website entitled "The Real Jason Vogel: The Dirt Road to Nowhere," with the subheading "The Slumlord?"

13. The domain is registered by The Go Daddy Group, Inc., at www.godaddy.com.  The web site is hosted by HostGator.

14. Defendants do not identify themselves on the website.

15. Defendants' website contains false and defamatory information about Plaintiff.

16. Among a myriad of other accusations, the website falsely states that "If we take a look at Jason Vogel's properties we see a man hell-bent on pinching every penny possible. His

properties have received **ZERO** improvements in the past decade. That's right, 10 years with not a finger lifted to improve the living standards of his tenants." A true and correct copy of the website is attached hereto as **Exhibit A**.  The web site includes pictures of the Plaintiff's properties in Washington, DC and identify them as such.  In fact, there is an entire section of the defamatory web site devoted to the Plaintiff's properties in Washington, DC.

17. Defendants, by and through the website falsely accuse the Plaintiff of being a "penny-pinching" "slum-lord."

18. Defendants falsely accuse Plaintiff of performing a "forced eviction, without having to actually evict on paper."

19. Defendants posted a threat to Plaintiff on the aforementioned website, stating "Vogel, Vogel, Vogel. You made this way too easy. *More to come if needed…*" (Emphasis added.)

20. The defamatory communications make reference to a "press release" and resulting bad press initiated by the Defendants and others working with the Defendants.  The so-called press release was issued by a political operative named Michael Trujillo.  Mr. Trujillo, acting in concert and conspiracy with the Defendants, falsely accuse the Plaintiff of violating California law, namely the Ellis Act.  As such, the speech is actionable as a matter of law in that it constitutes defamation *per se*.  Mr. Trujillo is a California resident.  He is not a defendant in this suit.

21. Defendants continued to defame the Plaintiff after the website was published. On or about July 1, 2016, Defendants posted numerous flyers on telephone poles in the neighborhood, in the general vicinity of Plaintiff's family home and along an approximately one mile stretch of Pacific Coast Highway.  The flyers have a photo of the Plaintiff and a large heading reading "I want to rip you off." The flyer also promoted the defamatory website, stating "Check me out at: www.TheRealJasonVogel.com."  A true and correct copy of a photograph of one of the fliers is attached as **Exhibit B.**

22. The defamatory fliers were also posted outside of Mozambique Restaurant, a location where Plaintiff frequently takes clients. In addition, Plaintiff has performed charity work with the

owner of Mozambique Restaurant.

23. On or about July 21, 2016, Plaintiff discovered that the website contained links to accompanying web pages on Facebook at https://www.facebook.com/RealJasonVogel/, and https://www.facebook.com/TheRealJasonVogel; on Twitter at https://twitter.com/realjasonvogel. The Facebook pages are attached hereto as **Exhibit C** and the Twitter pages are attached hereto as **Exhibit D**.

24. The website in Exhibit C make false and defamatory statements about Plaintiff mirroring statements found on the website.  Such false statements include, but are not limited to, false accusations that Plaintiff illegally evicted tenants, performed literally no maintenance on any of his properties for years, made no improvements on any property in a decade. Said comments specifically include pictures of the Plaintiff's properties located in Washington, DC.

25. The Facebook and Twitter pages repeatedly refer to Plaintiff as a "slum lord," and state that Plaintiff loves, and approves of, mold and trash on his properties.  Repeated links on both sites refer readers to the defamatory website.

26. The Facebook posts and Twitter tweets specifically drive people to the defamatory web site, and are therefore part and parcel of the same course and conduct of defamatory actions.

27. Defendants made the false and defamatory statements caused the Plaintiff special harm by damaging Plaintiff's reputation, causing him emotional distress, causing him personal embarrassment and financial harm, including special harm in Washington, DC.

28. The website, Facebook pages, Twitter tweets and the defamatory fliers have in fact damaged Plaintiff's reputation, caused him emotional distress, and damaged his earnings.

29. A web site called NextDoor is designed to facilitate interactions and discussions of interest to members of the local community.  A person who self-identified herself as Sally Forsythe joined two NextDoor communities in proximity to the Plaintiff's property in Los Angeles. Sally Forsythe may be her real name.  It is also possible that Sally Forsythe is an alias for

someone else.   The reason that the Plaintiff questions the real name of Sally Forsythe is because she signed up for two separate Nextdoor accounts using two different home addresses.  NextDoor has no records that they actually verified Sally Forsythe's address.  In one case, the physical address does not exist.  For the other NextDoor account, the listed address is a post office.

30. Sally Forsythe e-mailed derogatory information about the Plaintiff to the Los Angeles City Government.  Internet Protocol (IP) addresses obtained through discovery indicate that Ms. Forsythe lives in or around Herndon, Virginia, a suburb of Washington, DC.

31. The Plaintiff has reason to suspect that John Doe 1 may be named Sally Forsythe.  However, the Plaintiff does not yet have proof to support his suspicion.  Early discovery is required to obtain more information regarding the specific location in Herndon, VA where Sally Forsythe, or the person who is using the name Sally Forsythe, resides.

32. IP addresses indicate that Doe 2 lives in San Antonio, Texas; Doe 3 lives in El Paso, Texas and Doe 4 lives in Chicago, Illinois or in nearby Naperville, Illinois.

33. The Defendants, together and with others, did enter into a civil conspiracy to harm the Plaintiff.  Through their coordinate joint efforts, individually and collectively, and as a direct result of their conspiracy, they did cause the Plaintiff great injury.

### COUNT I – DEFAMATION

34. Plaintiff reasserts and incorporates by reference the foregoing allegations as if fully set forth here.

35. Defendants made false and defamatory statements concerning Plaintiff as shown in Exhibits A, B, C and D and as described herein.

36. Defendants published and communicated those false and defamatory statements concerning Plaintiff to third parties without privilege or authorization.

37. The Defendants engaged in a vicious and very personal defamation campaign designed to

6

inflict the maximum amount of damage to the Plaintiff in his hometown of Washington, DC. They specifically targeted the Tweets to individuals located in Washington, DC, as opposed to the general population at large.  For example, Defendants addressed defamatory Tweets about the Plaintiff to the George Washington Urban League, located in Washington, DC; Housing Advocacy Team, located in Washington, DC; Housing Advisory Group, located in Washington, DC; the Department of Housing and Urban Development, in Washington, DC; and AirBnB, a service that the Plaintiff uses in Washington, DC to rent apartments.  The Defendants secured Washington, DC Tweet followers to receive their targeted defamatory posts, including @SocialInDC; @PatKellyDC; @DC-Assemblers; @KnowYourFitness (Know Your Fitness DC); and @VincentGray2016, a current DC City Councilmember and former Washington, DC mayor.  The Tweets specifically direct the recipients to the defamatory web site.

38. Defendants acted with fault amounting to at least negligence as the truth or falsity of the statements.  Most likely acted with actual malice in publishing defamatory statements concerning Plaintiff.

39. Defendants' statements concerning Plaintiff are defamatory *per se* and caused the Plaintiff special harm as set forth elsewhere in the complaint.

40. As a result of Defendants' false and defamatory statements concerning Plaintiff., Plaintiff suffered and will continue to suffer damage, including economic damages, damages to his reputation, and/or damage to his current and prospective business relations.

## COUNT II – FALSE LIGHT

41. Plaintiff reasserts and incorporates by reference the foregoing allegations as if fully set forth here.

42. Defendants' and their co-conspirators statements were false and offensive.  They were made to the public when the statements were posted on the website and in the flyers posted around the Plaintiff's family home, mailed to his workplace and disbursed on Facebook and Twitter.

These statements caused the Plaintiff mental distress when the falsities were exposed to public view, the Plaintiff having been presented to the public in a false light. The defendants have created in the mind of the viewing public a false impression as to his personal motives and his character. This personal embarrassment extends to the Plaintiff in Washington, DC by virtue of his family and friends living in this city.

43. Defendants' statements posted on the aforementioned website and on the aforementioned flyers are "highly offensive to a reasonable person."

44. Defendants and their co-conspirators are at fault and knew, or were reckless, as to the falsehood of their statements above.

45. As a direct and proximate result of Defendants' aforementioned statements, Plaintiff has been and will continue to be damaged and injured emotionally due to the damage caused, *inter alia*, to his family, his character and his reputation.

**COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

46. Plaintiff reasserts and incorporates by reference the foregoing allegations as if fully set forth here.

47. Plaintiff has valid business relationships and business expectancies with his current and prospective tenants, business partners, employees, and friends, among others. Those business relationships include investors, lenders and partners in Washington, DC.

48. Defendants knew or should have known of Plaintiff's valid business relationships and business expectancies at all relevant times hereto.

49. Defendants intentionally interfered with Plaintiff's valid business relationships and expectancies by intentionally making defamatory statements concerning Plaintiff's business practices. They intentionally made statements unjustified in law with malice for the purpose of invading Plaintiff's business relationships and business expectancies, and inducing or causing a breach or termination of Plaintiff's business relationships and business expectancies.

50. For example, the defamatory communications specially told the public not to rent apartments

from the Plaintiff.  The Plaintiff's apartments include units located in Washington, DC.

51. In addition, at least one real estate co-venture business opportunity presented to the Plaintiff was withdrawn when the developer discovered the web site and determined that the Plaintiff's bad online reputation caused solely by the Defendants' defamation would tarnish the proposed venture if the Plaintiff was to participate.

52. As a result of Defendants' intentional interference with Plaintiff's valid business relationships and business expectancies, Plaintiff has suffered and will continue to suffer damage, including economic damages, damages to his reputation, and/or damage to his current and prospective business relations.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53. Plaintiff reasserts and incorporates by reference the foregoing allegations as if fully set forth here.

54. Defendants, by and through the making of such false, defamatory, and libelous statements, behaved intentionally and/or recklessly.

55. Defendants, by and through the making of such false, defamatory, and libelous statements, intended to cause emotional distress upon the Plaintiff.

56. The false and malicious website statements, Facebook posts and Twitter tweets by the defendants were intended to cause embarrassment and harm to the Plaintiff.

57. The placing of flyers by Plaintiff's residence was intended to not only defame him, but also to frighten and intimidate him, by demonstrating that Defendants were aware where he and his family reside, and that they are free to defame him and implicitly threaten him within close proximity of his home.

58. Defendants intended to cause emotional distress upon Plaintiff by including an implicit threat to Plaintiff's safety on the aforementioned website Site.

59. The making of such false, threatening, defamatory, libelous, and threatening statements by defendants were so outrageous in character, and so extreme in degree, as to go beyond all

9

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

60. Plaintiff has suffered, and continues to suffer severe emotional distress and emotional injury.

61. Defendants' aforementioned actions were the direct and proximate cause of such severe emotional distress and emotional injury to Plaintiff.

**62.** Plaintiff suffered and continues to suffer mental anguish as a result of being threatened, defamed, and libeled by the defendants, and said mental anguish is of a nature than no reasonable person could be expected to endure.

63. This personal embarrassment extends to the Plaintiff in Washington, DC by virtue of his family and friends living in this city.

## COUNT V – TRESPASS

64. Plaintiff reasserts and incorporates by reference the foregoing allegations as if fully set forth here.

65. Defendants, either directly or through their agents and co-conspirators, did physically enter upon property owned and possessed by Plaintiff for the purpose of taking pictures of Plaintiff's properties, including his properties located in Washington, DC.

66. This intrusion was intentional and unlawful, without the consent of Plaintiff, and interfered with the Plaintiff's exclusive possession of the land, including his properties located in Washington, DC, California and New Mexico.

67. The Plaintiff was harmed by this trespass because it was done specifically to discourage people from renting property from the Plaintiff.  The tweets expressly tell people, as examples, not to rent from the Plaintiff and that the Plaintiff makes tenants' lives miserable. Targeting the Plaintiff's Airbnb customers, and referring to his Washington, DC property by showing a photograph of his Washington, DC property upon which the defendants trespassed, the defendants write "#hollywoodslumlord ruins yet another necessary accommodation owed to his @Airbnb renters, gas utility & maintenance" with the caption

under the photograph of the Washington, DC property reading "ZERO IMPROVEMENTS". Similar postings and pictures relate to the Plaintiff's other properties in Washington, DC, California and New Mexico, thereby harming the Plaintiff with respect each and every one of his properties by the Defendants' trespass.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff demands judgment from all Defendants, jointly and severally, as follows:

A. For Preliminary and Permanent Injunctive Relief Upon information and belief some or all of the improper and unlawful conduct of Defendants alleged above is continuing and will continue in the future absent injunctive relief from the Court, and Plaintiff will continue to be damaged by the same;

B. In the absence of the entry of a preliminary and permanent injunction by the Court, Plaintiff will suffer serious and irreparable harm and injury, including but not limited to damage to his reputation;

C. The entry of a preliminary and permanent injunction will not unduly harm or burden Defendants because they are required as a matter of law to refrain from disseminating defamatory and threatening statements regarding the Plaintiff;

D. Public policy favors the entry of a preliminary and permanent injunction because, *inter alia*, such relief will prevent unlawful conduct and will preserve and protect the Plaintiff's reputation;

E. For an entry requiring Defendants to post a retraction of all of the false and defamatory statements published by Defendants about the Plaintiff;

F. For an entry of a Preliminary and Permanent Injunction ordering Defendants to post no more defamatory flyers, in any location, regarding the Plaintiff;

G. For a preliminary and permanent injunction against the Defendants ordering them to delete the defamatory website, delete the defamatory Twitter account, and to transfer control of TheRealJasonVogel.com to Plaintiff.

11

H. For compensatory damages in excess of $2,000,000.00;

I. For punitive damages;

J. For costs, interest, and attorneys' fees; and

K. And for any other relief that this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Jason Vogel demands a trial by jury on all issues so triable on all Counts in this action.


DATED: May 1, 2017

Respectfully Submitted,


By:  */s/ Kenneth A. Vogel*
Kenneth Vogel, Esq.
Bar-Adon & Vogel, PLLC
DC Bar #: 413407
1642 R St. NW
Washington, DC 20009
Tel: (202) 332-7323
Fax: (202) 332-7326
kavogel@metrolegalsolutions.com
Attorneys for Plaintiff
JASON G. VOGEL

12